UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ERIC M. PENATE | ) Case No. C 08-0643 MPH |
| | ) |
| C/o 26021 Gettysburg Av., | ) **PRECIEPE TO THE CLERK** |
| | ) |
| Hayward, California Zip code Exempt, | ) |
| | |
| Libellant, | |
| | |
| vs. | |
| | |
| WILSHIRE CREDIT CORPORATION et. Al. | |
| | |
| C/o P.O. Box 8517 | |
| | |
| Portland, Oregon [97207] | |
| | |
| Libellee, | ) |
| | ) |
| | ) |

*08-643 MHP*

*docket as "received"*

### PRECIEPE TO THE CLERK

Now, by special appearance, comes Eric M. Penate, the flesh and blood man, Sui Juris and unschooled in law, hereinafter referred to as me, my, I, or the like, to make the following NOTICE with clean hands, full disclosure and no intent to defraud, furthermore, the following first hand asseverations are true, complete, certain and not meant to mislead.

NOTICE is hereby given that:

1.) I am of legal age, competent to testify and under no legal disability.

2.) Kindly find enclosed a VERIFIED NOTICE OF DEFAULT and ENTRY OF DEFAULT in Case No. C 08-0643 MPH.

F.R.C.P. Rule 55(a) Entry provides:

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

And F.R.C.P. Rule 55 (b) Judgment provides:

Judgment by default may be entered as follows:

(1) By the Clerk.
When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.

3.) Kindly verify that libellee has refused and/or failed to answer

and/or otherwise appear and defend and then ENTER JUDGMENT BY DEFAULT

in the above captioned case.

Dated this 20th day of March, 2008

By: authorized representative
Without recourse

1        UNITED STATES DISTRICT COURT

2      NORTHERN DISTRICT OF CALIFORNIA

3

4
                                          ) Case No. C 08-0643 MHP
5    ERIC M. PENATE et. al.               )
                                          )
6    C/o 26021 Gettysburg Avenue,         ) ENTRY OF DEFAULT
                                          ) [F.R.C.P. 55(a)]
7    Hayward, California Zip Code Exempt,  )
                                          )
8              Libellant,                 )
                                          )
9         vs.                             )
                                          )
10   WILSHIRE CREDIT CORPORATION et. Al.  )
                                          )
11   C/o P.O. Box 8517                    )
                                          )
12   Portland, Oregon [97207]             )
                                          )
13             Libellee,                  )
                                          )
14   _____   )

                        ENTRY OF DEFAULT

15
     Libellant in the above captioned case seeks a default judgment as
16
         libellees have failed to answer and/or otherwise appear and defend the
17
         complaint.
18
     1.)The RECORD shows that on January 28th,2008 libellant filed suit in
19
         UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,
20
         Case number C 08-0643MHP.
21
     2.)THE RECORD shows that WILSHIRE CREDIT CORPORATION received service of
22
     summons on the 1ST day of February, 2008, by Registered mail number
23
     RR847404132US.
24
     3.)The RECORD shows that WILSHIRE CREDIT CORPORATION has refused and/or
25
     failed to answer and/or otherwise appear and defend.


                        ENTRY OF DEFAULT - 1 OF 2

1  4.)Twenty-eight days have passed since Case number C 08-0643 MHP was

2  filed.

3  5.)THE RECORD shows that WILSHIRE CREDIT CORPORATION received the NOTICE

4  OF DEFAULT on the 14th day of March 2008, by certified mail number 7006

5  3450 0001 2036 3066.

6  6.)Three days have passed since WILSHIRE CREDIT CORPORATION received the

7  NOTICE OF DEFAULT.

8  7.)WILSHIRE CREDIT CORPORATION has remained silent.

9  8.)WILSHIRE CREDIT CORPORATION is not an infant or incompetent person.

10  9.)Federal Rules of Civil Procedure provide for default judgment by

11     the clerk for a failure to appear and defend [rule 55(a)].

12  10.)WILSHIRE CREDIT CORPORATION is in default for refusal and/or failure to answer and/or

13     otherwise appear and defend.

14  11.)A default judgment by the clerk establishing WILSHIRE CREDIT CORPORATION'S default is

15     appropriate.

16  12.)A sum certain amount of $17,348,544.00 is due and owing libellant

17     by libellee.

18     Therefore judgment by default is hereby entered for libellant against

19     Libellee IN THE AMOUNT OF $17,348,544.00 plus costs.

20

21                                              _____
                                                Clerk

22

23

24

25

FILED

MAR - 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ERIC M. PENATE,

        Plaintiff(s),

vs.

WILSHIRE CREDIT CORPORATION, et al.,

        Defendant(s).

Case No. 08-0643 MHP

**ORDER DISMISSING**
**COMPLAINT**
**WITHOUT LEAVE**
**TO AMEND**

This court dismissed plaintiff's complaint with leave to amend in accordance with the instructions in the order filed on February 21, 2008. Plaintiff has now filed two documents, one entitled "Memorandum of More Definitative [sic] Statement" and the other entitled "Notice of Appointment of Fiduciary Trustee". Neither of these documents amounts to an amended complaint. They are garbled and undecipherable so that the court cannot determine the nature of plaintiff's claims. Since plaintiff has not been able to state a clear and plain statement of his claim in a manner that is comprehensible, the court must dismiss his complaint - - this time without leave to amend. Accordingly,

IT IS HEREBY ORDERED that the "complaint", "memorandum" and "notice" filed herein are DISMISSED without leave to amend. Plaintiff shall file no further papers in this action.

Date: <u>March 4, 2008</u>

MARILYN HALL PATEL
Judge
United States District Court
Northern District of California

Accepted for value and settlement
Returned for value and UCC3-603(b)
Per UR 1-82 and 1-803
IN# _____
by _____ Registered Recipient
Without Recourse

United States District Court
For the Northern District of California

# 12

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


ERIC M. PENATE,

          Plaintiff,

  v.

WILSHIRE CREDIT CORPORATION et al,

          Defendant.

_____/

Case Number: CV08-00643 MHP

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 5, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Eric Miguel Penate
26021 Gettysburg Avenue
Hayward, CA


Dated: March 5, 2008

Richard W. Wieking, Clerk
By: Anthony Bowser, Deputy Clerk

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ERIC M. PENATE,

        Plaintiff,

v.

WILSHIRE CREDIT CORPORATION et al,

        Defendant.

_____/

Case Number: CV08-00643 MHP

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 5, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Eric Miguel Penate
26021 Gettysburg Avenue
Hayward, CA

Dated: March 5, 2008

                Richard W. Wieking, Clerk
                By: Anthony Bowser, Deputy Clerk

Eric Miguel Penate
26021 Gettysburg Avenue
Hayward, CA


CV08-00643 MHP

From: Eric Penate
C/o 26021 Gettysburg Av.
Hayward, California

MAR 2 4 2008

To: MARILYN HALL PATEL esquire
C/o "JUDGE"
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 Golden Gate Avenue
San Francisco, California [94102]

Re: Case (Account) Number 08-0643 MHP

Kindly find enclosed the following:
- Private Notice to Show Cause
- Definition of Garble from Black's 4th ed. Law Dictionary, Page 809
- Definition of Notice from Black's 4th ed. Law Dictionary, Page 1210
- Article featuring EDITH JONES esquire
- Article featuring DENNIS G. JACOBS esquire
- ORDER by "JUDGE" CHRISTOPHER A. BOYKO

And know that your position as an effective administrator of the bankruptcy of the
UNITED STATES will be brought into serious doubt as more people are exposed to the
public filings that you have made admitting your incompetence.

Which of your masters will praise you after you have brought further harm to the full
faith and credit of the UNTIED STATES? They will leave you out to dry.

Do you think this is a game? People are losing their homes all across this once great land.
The public record is flooded with information that tells us that money is created as a
result of our signatures. The banks "monetize" those promises to pay and then require a
premium of up to 400%. The problem of course is that the interest is never created. How
are you supposed to pay something that doesn't exist. It is unconscionable.

The banks have been running this nation into the ground for decades and since you
presumably took a public oath to defend against such assaults, it falls to you to either do
so or move out of the way and let someone else do it.

For you to feign the inability to comprehend a mans words, a man that is unschooled in
law, a man that has "paid" your fee, a man that is due respect and honesty as a contributor
to the full faith and credit is not only wrong, it is insidious.

By Authorized representative

Private Notice not for public filing

In the matter of:

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC M. PENATE | ) Case No. 08-0643 MHP |
| | ) |
| C/o 26021 Gettysburg Av., | ) **NOTICE TO SHOW CAUSE** |
| Hayward, California Zip Code Exempt, | ) |
| Libellant, | ) |
| vs. | ) |
| WILSHIRE CREDIT CORP. et. Al. | ) |
| Suite 200 | ) |
| C/o P.O. Box 78148 | ) |
| Phoenix, Arizona [85062] | ) |
| Libellee, | ) |

Notice to the agent is notice to the principal, notice to the principal
is notice to the agent.

Re: NOTICE TO SHOW CAUSE

Now, by special appearance, comes Eric Penate, the flesh and
blood man, Sui Juris and unschooled in law, hereinafter referred to as
me, my, I, or the like, to make the following  NOTICE with clean hands,
full disclosure and no intent to defraud, furthermore, the following
first hand asseverations are true, complete, certain and not meant to
mislead Additionally this presentment is not put forth for purposes of

delay nor to request any B.A.R. member attorned esquire, or agents

thereof, to make any determinations for me, legal or otherwise,

including but not limited to any so called "overturning of a motion".

This is not a motion. This is a NOTICE. If you are reading this then

the presumption will operate that you have ACTUAL NOTICE of the subject

matter herein and by acting contrary to this NOTICE you will be bound

by its terms. Fail not under penalty of Law!

NOTICE is hereby given that:

1.)     I am of legal age, competent to testify and under no legal
disability.

### OVERVIEW OF FACTS

2.)     On or about 2/15/08 I sent a MEMORANDUM, ACCEPTANCE OF OATH
OF OFFICE AND BOND, AND NOTICE OF APPOINTMENT OF CO-FIDUCIARY
TRUSTEE to MARILYN HALL PATEL esquire.

3.)     MARILYN HALL PATEL esquire is represented to be the "JUDGE"
in this matter.

4.)     MARILYN HALL PATEL esquire, is presumed to have graduated
from some "law school" and subsequently been admitted to the
local branch of the private B.A.R., taking some oath of office,
presumably as an "officer of the court".

5.)     MARILYN HALL PATEL esquire, is presumed to have the basic
mental skills to be able to look up confusing legal terms in a
law dictionary, apply them to the subject matter and form honest
answers that address the questions as posed.

6.)     The RECORD shows that MARILYN HALL PATEL esquire, filed
documents in this case claiming incompetence to be able to
comprehend the English language as contorted by those in the
"legal profession".·

### IN CONCLUSION

7.)     MARILYN HALL PATEL esquire, has three days from the
verified receipt of this NOTICE to SHOW CAUSE why;

a. a report of incompetence should not issue to the B.A.R. and

      b. any bonds for the account of MARILYN HALL PATEL esquire
        should not be liquidated.

My yea is my yea and my nay is my nay.

Dated this 21st day of March,
2008

By: authorized representative
Without recourse

## GAMING — GARBLER

"Gaming" is properly the act or engagement of the players. If by-standers or other third persons put up a stake or wager among themselves, to go to one or the other according to the result of the game, this is more correctly termed "betting."

**GAMING CONTRACTS.** See Wager.

**GAMING HOUSE.** A building, place, or room kept for use as a place to gamble, or to keep or exhibit for the purpose of gaming, any bank, table, alley, machine, wheel, or device, Davis v. State, Tex.Civ. App., 165 S.W.2d 757, 758; as the business of the occupants. 1 Russ.Crimes, 299; Rosc.Crim.Ev. 663; People v. Jackson, 3 Denio, N.Y., 101, 45 Am. Dec. 449.

**GAMING TABLE.** Any table that may be used for playing games of chance for money or property. State v. Leaver, 171 Mo.App. 371, 157 S.W. 821, 822; Everhart v. People, 54 Colo. 272, 130 P. 1076, 1080.

**GANANCIAL PROPERTY.** In Spanish law, a species of community in property enjoyed by husband and wife, the property being divisible between them equally on a dissolution of the marriage. 1 Burge. Confl.Law, 418. Cartwright v. Cartwright, 18 Tex. 634; Cutter v. Waddingham, 22 Mo. 254. See Community.

**GANANCIALES.** A Spanish term, used as either a noun or adjective, and applied to property acquired during marriage. Discussed in Sanchez v. Bowers, C.C.A.N.Y., 70 F.2d 715, 716. See Ganancial Property, *supra*.

**GANANCIAS.** In Spanish law, gains or profits.

**GANG.** Any company of persons who go about together or act in concert, in modern use mainly for criminal purposes. State v. Gaynor, 119 N.J.L. 582, 197 A. 360, 362.

**GANG-WEEK.** The time when the bounds of the parish are lustrated or gone over by the parish officers,—rogation week. Enc.Lond.

**GANGIATORI.** Officers in ancient times whose business it was to examine weights and measures. Skene.

**GANGSTER.** A member of a gang of roughs, hireling criminals, thieves, or the like. State v. Gaynor, 119 N.J.L. 582, 197 A. 360, 362.

**GANTELOPE** (pronounced "gauntlett.") A military punishment, in which the criminal running between the ranks receives a lash from each man. Enc.Lond. This was called "running the gauntlett."

**GAOL.** A prison for temporary confinement; a jail; a place for the confinement of offenders against the law.

As distinguished from "prison," it is said to be a place for temporary or provisional confinement, or for the punishment of the lighter offenses and misdemeanors. See, also, Jail.

**GAOL DELIVERY.** In criminal law, the delivery or clearing of a gaol of the prisoners confined therein, by trying them.

In popular speech, the clearing of a gaol by the escape of the prisoners.

*General Gaol Delivery.* In English law, at the assizes (*q. v.*) the judges sit by virtue of five several authorities, one of which is the commission of "general gaol delivery." This empowers them to try and deliverance make of every prisoner who shall be in the gaol when the judges arrive at the circuit town, whether an indictment has been preferred at any previous assize or not. 4 Bl.Comm. 270. This is also a part of the title of some American criminal courts, as, in Pennsylvania, the "court of oyer and terminer and general jail delivery."

**GAOL LIBERTIES, GAOL LIMITS.** A district around a gaol, defined by limits, within which prisoners are allowed to go at large on giving security to return. It is considered a part of the gaol. Singer v. Knott, 237 N.Y. 110, 142 N.E. 435, 436.

**GAOLER.** A variant of "jailer" (*q. v.*).

**GARAGE.** A place in which motor vehicles are stored and cared for. Legum v. Carlin, 168 Md. 191, 177 A. 287, 290, 99 A.L.R. 536.

A public garage is a place where automobiles are stored for compensation, but a charge is usually not essential for storing vehicles of customers, the principal business of a garage being generally that of repairing cars. Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., §§ 4910, 4965; State v. Elkins, 187 N.C. 533, 122 S.E. 289.

**GARANDIA, or GARANTIA.** A warranty. Spelman.

**GARANTIE.** In French law, this word corresponds to warranty or covenants for title in English law. In the case of a sale this *garantie* extends to two things: (1) Peaceful possession of the thing sold; and (2) absence of undisclosed defects. (*défauts cachés.*) Brown.

**GARATHINX.** In old Lombardic law, a gift; a free or absolute gift; a gift of the whole of a thing. Spelman.

**GARAUNTOR.** L. Fr. In old English law, a warrantor of land; a vouchee; one bound by a warranty to defend the title and seisin of his alienee, or, on default thereof, and on eviction of the tenant, to give him other lands of equal value. Britt. c. 75.

**GARBA.** In old English law, a bundle or sheaf. *Blada in garbis,* corn or grain in sheaves. Reg. Orig. 96; Bract. fol. 209.

**GARBA SAGITTARUM.** A sheaf of arrows, containing twenty-four. Otherwise called "*echaffa sagittarum.*" Skene.

**GARBALES DECIMÆ.** In Scotch law, tithes of corn, (grain.) Bell.

**GARBLE.** In English statutes, to sort or cull out the good from the bad in spices, drugs, etc. Cowell.

**GARBLER OF SPICES.** An ancient officer in the city of London, who might enter into any shop, warehouse, etc., to view and search drugs and spices, and garble and make clean the same, or see that it be done. Mozley & Whiteley.

## NOTATION — NOTICE

**NOTATION.** In English probate practice, the act of making a memorandum of some special circumstance on a probate or letters of administration.

Thus, where a grant is made for the whole personal estate of the deceased within the United Kingdom, which can only be done in the case of a person dying domiciled in England, the fact of his having been so domiciled is noted on the grant. Coote, Prob.Pr. 36; Sweet.

**NOTCHELL, or NOCHELL.** "Crying the wife's Notchell" seems to have been a means of preventing her running up debts against her husband. 20 Law Mag. & Rev. 280.

It is the custom in Lancashire for a man to advertise that he will not be responsible for debts contracted by her (his wife) after that date. He is thus said to *notchel* her, and the advertisement is termed a notchel notice. N. and Q., 7th ser., VIII, 245, quoted in Cent.Dict.

**NOTE,** *v.* To make a brief written statement; to enter a memorandum; as to note an exception.

**NOTE,** *n.* A unilateral instrument containing an express and absolute promise of signer to pay to a specified person or order, or bearer, a definite sum of money at a specified time. Shawano Finance Corporation v. Julius, 214 Wis. 637, 254 N.W. 355. An abstract, a memorandum; an informal statement in writing. Road Improvement Dist. No. 4 of Cleveland County v. Southern Trust Co., 152 Ark. 422, 239 S.W. 8, 11; American Nat. Bank v. Marshall, 122 Kan. 793, 253 P. 214, 215. See Bought Note; Notes; Judgment Note; Promissory Note; Sold Note.

**NOTE A BILL.** When a foreign bill has been dishonored, it is usual for a notary public to present it again on the same day, and, if it be not then paid, to make a minute, consisting of his initials, the day, month, and year, and reason, if assigned, of non-payment. The making of this minute is called "noting the bill." Wharton.

**NOTE OF A FINE.** In old conveyancing, one of the parts of a fine of lands, being an abstract of the writ of covenant, and the concord; naming the parties, the parcels of land, and the agreement. 2 Bl.Comm. 351.

**NOTE OF ALLOWANCE.** In English practice, a note delivered by a master to a party to a cause, who alleged that there was error in law in the record and proceedings, allowing him to bring error.

**NOTE OF HAND.** A popular name for a promissory note. Perry v. Maxwell, 17 N.C. 496; Hopkins v. Holt, 9 Wis. 230.

**NOTE OF PROTEST.** A memorandum of the fact of protest, indorsed by the notary upon the bill, at the time, to be afterwards written out at length.

**NOTE OR MEMORANDUM.** Under statute of frauds, an informal minute or memorandum made on the spot. Clason v. Bailey, 14 Johns., N.Y. 492. It must contain all the essential elements and substantial parts of the contract. Stanley v. A. Levy & J. Zentner Co., 60 Nev. 432, 112 P.2d 1047, 1053.

**NOTES.** In practice, memoranda made by a judge on a trial, as to the evidence adduced, and the points reserved, etc. A copy of the judge's notes may be obtained from his clerk.

**NOTHUS.** Lat. In Roman law, a natural child or a person of spurious birth.

**NOTICE.** Information; the result of observation, whether by the senses or the mind; knowledge of the existence of a fact or state of affairs; the means of knowledge. Abercrombie v. Virginia-Carolina Chemical Co., 206 Ala. 615, 91 So. 311, 312; Knights and Ladies of Security v. Bell, 93 Okl. 272, 220 P. 591, 597.

Knowledge of facts which would naturally lead an honest and prudent person to make inquiry constitutes "notice" of everything which such inquiry pursued in good faith would disclose. Twitchell v. Nelson, 131 Minn. 375, 155 N.W. 621, 624; German-American Nat. Bank of Lincoln v. Martin, 277 Ill. 629, 115 N.E. 721, 729.

In another sense, "notice" means information, an advice, or written warning, in more or less formal shape, intended to apprise a person of some proceeding in which his interests are involved, or informing him of some fact which it is his right to know and the duty of the notifying party to communicate.

Under the Negotiable Instrument Law "notice" of infirmity of instrument is actual knowledge or knowledge of such facts that taking note amounts to bad faith. Glendo State Bank v. Abbott, 30 Wyo. 98, 216 P. 700, 702, 34 A.L.R. 294.

Notice is either (1) statutory, *i. e.*, made so by legislative enactment; (2) actual, which brings the knowledge of a fact directly home to the party; or (3) constructive. Constructive notice may be subdivided into: *(a)* Where there exists actual notice of matter, to which equity has added constructive notice of facts, which an inquiry after such matter would have elicited; and *(b)* where there has been a designed abstinence from inquiry for the very purpose of escaping notice. Wharton.

Actual notice has been defined as notice expressly and actually given, and brought home to the party directly. Jordan v. Pollock, 14 Ga. 145; McCray v. Clar, 82 Pa. 457; Morey v. Milliken, 86 Me. 464, 30 A. 102. The term "actual notice," however, is generally given a wider meaning as embracing two classes, express and implied; the former includes all knowledge of a degree above that which depends upon collateral inference, or which imposes upon the party the further duty of inquiry; the latter imputes knowledge to the party because he is shown to be conscious of having the means of knowledge. In this sense actual notice is such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry. Pinkiesimer v. Smith, 164 Ga. 600, 139 S.E. 72, 74; White v. Fisher, 77 Ind. 65, 40 Am.Rep. 287.

Constructive notice is information or knowledge of a fact imputed by law to a person, (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it. Baltimore v. Whittington, 78 Md. 231, 27 A. 984; Acer v. Westcott, 46 N.Y. 384, 7 Am. Rep. 355.

Notice is also further classified as *express* or *implied.* Express notice embraces not only knowledge, but also that which is communicated by direct information, either written or oral, from those who are cognizant of the fact communicated. Baltimore v. Whittington, 78 Md. 231, 27 A. 984. Implied notice is one of the varieties of actual notice (not constructive) and is distinguished from "express" actual notice. It is notice inferred or imputed to a party by reason of his knowledge of facts or circumstances collateral to the main fact, of such a character as to put him upon inquiry, and which, if the inquiry were followed up with due diligence, would lead him definitely to the knowledge of the main fact. Rhodes v. Outcalt, 48 Mo. 370; Baltimore v. Whittington, 78 Md. 231, 27 A. 984; Wells v. Sheerer, 78 Ala. 147.

1210

New Attorneys and Law Students

## With the Bench Cozied Up To The Bar, The Lawyers Can't Lose

**By Adam Liptak**
**The New York Times**
Sept. 2007



Dennis G. Jacobs, the chief judge of the federal appeals court in New York, is a candid man, and in a speech last year he admitted that he and his colleagues had "a serious and secret bias." Perhaps unthinkingly but quite consistently, he said, judges can be counted on to rule in favor of anything that protects and empowers lawyers.

Once you start thinking about it, the examples are everywhere. The lawyer-client privilege is more closely guarded than any other. It is easier to sue for medical malpractice than for legal malpractice. People who try to make a living helping people fill out straightforward forms are punished for the unauthorized practice of law.

But Judge Jacobs's main point is a deeper one. Judges favor complexity and legalism over efficient solutions, and they have no appreciation for what economists call transaction costs. They are aided in this by lawyers who bill by the hour and like nothing more than tasks that take a lot of time and cost their clients a lot of money.

And there is, of course, the pleasure of power, particularly in cases involving the great issues of the day.

"Judges love these kinds of cases," said Judge Jacobs, whose speech was published in The Fordham Law Review in May. "Public interest cases afford a judge more sway over public policy, enhance the judicial role, make judges more conspicuous and keep the law clerks happy."

There are costs here, too, he said, including "the displacement of legislative and executive power" and "the subordination of other disciplines and professions."

Yet, at the conclusion of a big public-policy case, the bar and bench rejoice. "We smugly congratulate ourselves," Judge Jacobs said, "on expanding what we are pleased to call the rule of law."

Benjamin H. Barton, a law professor at the University of Tennessee, examined some of the same issues in an article to be published next year in The Alabama Law Review titled "Do Judges Systematically Favor the Interests of the Legal Profession?"

That question mark notwithstanding, there is little doubt about where Professor Barton comes out.

He noted, for instance, that the legal profession is the only one that is completely self-regulated. "As a general rule," Professor Barton wrote, "foxes make poor custodians of henhouses."

Professor Barton explored a long list of examples, including the aftermath of the Supreme Court's 1966 decision in Miranda v. Arizona. Miranda, as everyone with a television set knows, protected the right to remain silent and the right to a lawyer.

Over the years, though, courts have approved all sorts of police strategies that have eroded the right to remain silent. At the same time, Professor Barton wrote, the courts "chose to retain quite robust protections for accused who clearly expressed a desire for a lawyer."

"The advantages to the legal profession are clear," he added. "Whatever else an accused should know, she should know to request a lawyer first and foremost."

And the cases keep coming.

This month, a New Jersey appeals court basically immunized lawyers from malicious prosecution suits in civil cases. Even lawyers who know their clients are pushing baseless claims solely to harass the other side are in the clear, the court said, unless the lawyers themselves have an improper motive.

Lester Brickman, who teaches legal ethics at Cardozo Law School, said the decision was just one instance of a broad phenomenon.

"The New Jersey courts have determined to protect the legal profession in a way that no other professions enjoy," Professor Brickman said. "It's regulation by lawyers for lawyers."

Other professions look for elegant solutions. It is the rare engineer, software designer or plumber who chooses an elaborate fix when a simple one will do. The legal system, by contrast, insists on years of discovery, motion practice, hearings, trials and appeals that culminate in obscure rulings providing no guidance to the next litigant.

Last month, Judge Jacobs put his views into practice, dissenting from a decision in a tangled lawsuit about something a college newspaper published in 1997. The judges in the majority said important First Amendment principles were at stake, though they acknowledged that the case involved, at most, trivial sums of money.

Judge Jacobs's dissent started with an unusual and not especially collegial disclaimer. He said he would not engage the arguments in the majority decision because "I have not read it."

He was, he said, incredulous that "after years of litigation over $2, the majority will impose on a busy judge to conduct a trial on this silly thing, and require a panel of jurors to set aside their more important duties of family and business in order to

decide it."

Writing with the kind of verve and sense of proportion entirely absent in most legal work, Judge Jacobs concluded that "this is not a case that should occupy the mind of a person who has anything consequential to do."

Copyright 2007 The New York Times Company

# MassNews.com



**LIBEL**
by New York Times

**Get your Copy
Today
Click Here**

American Legal System Is Corrupt Beyond Recognition, Judge Tells Harvard Law School

**By Geraldine Hawkins
March 7, 2003**

The American legal system has been corrupted almost beyond recognition, Judge Edith Jones of the U.S. Court of Appeals for the Fifth Circuit, told the Federalist Society of Harvard Law School on February 28.

She said that the question of what is morally right is routinely sacrificed to what is politically expedient. The change has come because legal philosophy has descended to nihilism.



Judge Edith H. Jones of the U.S. Court of Appeals for the Fifth Circuit talks to members of Harvard Law School's Fed-eralist Society. Jones said that the question of what is mor-ally right is routinely sacrificed to what is politically expedient.

"The integrity of law, its religious roots, its transcendent quality are disappearing. I saw the movie 'Chicago' with Richard Gere the other day. That's the way the public thinks about lawyers," she told the students.

"The first 100 years of American lawyers were trained on Blackstone, who wrote that: 'The law of nature . dictated by God himself . is binding . in all counties and at all times; no human laws are of any validity if contrary to this; and such of them as are valid derive all force and all their authority . from this original.' The Framers created a government of limited power with this understanding of the rule of law - that it was dependent on transcendent religious obligation," said Jones.

She said that the business about all of the Founding Fathers being deists is "just wrong," or "way overblown." She says they believed in "faith and reason," and this did not lead to intolerance.

"This is not a prescription for intolerance or narrow sectarianism," she continued, "for unalienable rights were given by God to all our fellow citizens. Having lost sight of the moral and religious foundations of the rule of law, we are vulnerable to the destruction of our freedom, our equality before the law and our self-respect. It is my fervent hope that this new century will experience a revival of the original understanding of the rule of law and its roots.

"The answer is a recovery of moral principle, the sine qua non of an orderly society. Post 9/11, many events have been clarified. It is hard to remain a moral relativist when your own people are being killed."

According to the judge, the first contemporary threat to the rule of law comes from

within the legal system itself.

Alexis de Tocqueville, author of Democracy in America and one of the first writers to observe the United States from the outside looking-in, "described lawyers as a natural aristocracy in America," Jones told the students. "The intellectual basis of their profession and the study of law based on venerable precedents bred in them habits of order and a taste for formalities and predictability." As Tocqueville saw it, "These qualities enabled attorneys to stand apart from the passions of the majority. Lawyers were respected by the citizens and able to guide them and moderate the public's whims. Lawyers were essential to tempering the potential tyranny of the majority.

"Some lawyers may still perceive our profession in this flattering light, but to judge from polls and the tenor of lawyer jokes, I doubt the public shares Tocqueville's view anymore, and it is hard for us to do so.

"The legal aristocracy have shed their professional independence for the temptations and materialism associated with becoming businessmen. Because law has become a self-avowed business, pressure mounts to give clients the advice they want to hear, to pander to the clients' goal through deft manipulation of the law. . While the business mentality produces certain benefits, like occasional competition to charge clients lower fees, other adverse effects include advertising and shameless self-promotion. The legal system has also been wounded by lawyers who themselves no longer respect the rule of law,"

The judge quoted Kenneth Starr as saying, "It is decidedly unchristian to win at any cost," and added that most lawyers agree with him.

However, "An increasingly visible and vocal number apparently believe that the strategic use of anger and incivility will achieve their aims. Others seem uninhibited about making misstatements to the court or their opponents or destroying or falsifying evidence," she claimed. "When lawyers cannot be trusted to observe the fair processes essential to maintaining the rule of law, how can we expect the public to respect the process?"

Lawsuits Do Not Bring 'Social Justice'

Another pernicious development within the legal system is the misuse of lawsuits, according to her.

"We see lawsuits wielded as weapons of revenge," she says. "Lawsuits are brought that ultimately line the pockets of lawyers rather than their clients. . The lawsuit is not the best way to achieve social justice, and to think it is, is a seriously flawed hypothesis. There are better ways to achieve social goals than by going into court."

Jones said that employment litigation is a particularly fertile field for this kind of abuse.

"Seldom are employment discrimination suits in our court supported by direct evidence of race or sex-based animosity. Instead, the courts are asked to revisit petty interoffice disputes and to infer invidious motives from trivial comments or work-performance criticism. Recrimination, second-guessing and suspicion plague the workplace when tenuous discrimination suits are filed . creating an atmosphere in which many corporate defendants are forced into costly settlements because they simply cannot afford to vindicate their positions.

"While the historical purpose of the common law was to compensate for individual injuries, this new litigation instead purports to achieve redistributive social justice.

Scratch the surface of the attorneys' self-serving press releases, however, and one finds how enormously profitable social redistribution is for those lawyers who call themselves 'agents of change.'"

Jones wonders, "What social goal is achieved by transferring millions of dollars to the lawyers, while their clients obtain coupons or token rebates."

The judge quoted George Washington who asked in his Farewell Address, "Where is the security for property, for reputation, for life, if the sense of religious obligation desert the oaths . in courts of justice?"

Similarly, asked Jones, how can a system founded on law survive if the administrators of the law daily display their contempt for it?

"Lawyers' private morality has definite public consequences," she said. "Their misbehavior feeds on itself, encouraging disrespect and debasement of the rule of law as the public become encouraged to press their own advantage in a system they perceive as manipulatable."

The second threat to the rule of law comes from government, which is encumbered with agencies that have made the law so complicated that it is difficult to decipher and often contradicts itself.

"Agencies have an inherent tendency to expand their mandate," says Jones. "At the same time, their decision-making often becomes parochial and short-sighted. They may be captured by the entities that are ostensibly being regulated, or they may pursue agency self-interest at the expense of the public welfare. Citizens left at the mercy of selective and unpredictable agency action have little recourse."

Jones recommends three books by Philip Howard: The Death of Common Sense, The Collapse of the Common Good and The Lost Art of Drawing the Line, which further delineate this problem.

The third and most comprehensive threat to the rule of law arises from contemporary legal philosophy.

"Throughout my professional life, American legal education has been ruled by theories like positivism, the residue of legal realism, critical legal studies, post-modernism and other philosophical fashions," said Jones. "Each of these theories has a lot to say about the 'is' of law, but none of them addresses the 'ought,' the moral foundation or direction of law."

Jones quoted Roger C. Cramton, a law professor at Cornell University, who wrote in the 1970s that "the ordinary religion of the law school classroom" is "a moral relativism tending toward nihilism, a pragmatism tending toward an amoral instrumentalism, a realism tending toward cynicism, an individualism tending toward atomism, and a faith in reason and democratic processes tending toward mere credulity and idolatry."

No 'Great Awakening' In Law School Classrooms

The judge said ruefully, "There has been no Great Awakening in the law school classroom since those words were written." She maintained that now it is even worse because faith and democratic processes are breaking down.

"The problem with legal philosophy today is that it reflects all too well the broader post-Enlightenment problem of philosophy," Jones said. She quoted Ernest Fortin, who wrote in Crisis magazine: "The whole of modern thought . has been a series of heroic attempts to reconstruct a world of human meaning and value on the basis of . our purely mechanistic understanding of the universe."

Jones said that all of these threats to the rule of law have a common thread running through them, and she quoted Professor Harold Berman to identify it: "The traditional Western beliefs in the structural integrity of law, its ongoingness, its religious roots, its transcendent qualities, are disappearing not only from the minds of law teachers and law students but also from the consciousness of the vast majority of citizens, the people as a whole; and more than that, they are disappearing from the law itself. The law itself is becoming more fragmented, more subjective, geared more to expediency and less to morality. . The historical soil of the Western legal tradition is being washed away . and the tradition itself is threatened with collapse."

Judge Jones concluded with another thought from George Washington: "Of all the dispositions and habits which lead to prosperity, religion and morality are indispensable supports. In vain would that man claim the tribute of patriotism who should labor to subvert these great pillars of human happiness - these firmest props of the duties of men and citizens."

Upon taking questions from students, Judge Jones recommended Michael Novak's book, On Two Wings: Humble Faith and Common Sense.

"Natural law is not a prescriptive way to solve problems," Jones said. "It is a way to look at life starting with the Ten Commandments."

Natural law provides "a framework for government that permits human freedom," Jones said. "If you take that away, what are you left with? Bodily senses? The will of the majority? The communist view? What is it - 'from each according to his ability, to each according to his need?' I don't even remember it, thank the Lord," she said to the amusement of the students.

"I am an unabashed patriot - I think the United States is the healthiest society in the world at this point in time," Jones said, although she did concede that there were other ways to accommodate the rule of law, such as constitutional monarchy.

"Our legal system is way out of kilter," she said. "The tort litigating system is wreaking havoc. Look at any trials that have been conducted on TV. These lawyers are willing to say anything."

Potential Nominee to Supreme Court

Judge Edith Jones has been mentioned as a potential nominee to the Supreme Court in the Bush administration, but does not relish the idea.

"Have you looked at what people have to go through who are nominated for federal appointments? They have to answer questions like, 'Did you pay your nanny taxes?' 'Is your yard man illegal?'

"In those circumstances, who is going to go out to be a federal judge?"

Judge Edith H. Jones has a B.A. from Cornell University and a J.D. from the University of

Texas School of Law. She was appointed to the Fifth Circuit by President Ronald Reagan in 1985. Her office is in the U.S. Courthouse in Houston.

The Federalist Society was founded in 1982 when a group of law students from Harvard, Stanford, the University of Chicago and Yale organized a symposium on federalism at Yale Law School. These students were unhappy with the academic climate on their campuses for some of the reasons outlined by Judge Jones. The Federalist Society was created to be a forum for a wider range of legal viewpoints than they were hearing in the course of their studies.

From the four schools mentioned above, the Society has grown to include over 150 law school chapters. The Harvard chapter, with over 250 members, is one of the nation's largest and most active. They seek to contribute to civilized dialogue at the Law School by providing a libertarian and conservative voice on campus and by sponsoring speeches and debates on a wide range of legal and policy issues.

The Federalist Society consists of libertarians and conservatives interested in the current state of the legal profession. It is founded on three principles: 1) the state exists to preserve freedom, 2) the separation of governmental powers is central to our Constitution and 3) it is emphatically the province and duty of the judiciary to state what the law is, not what it should be.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE FORECLOSURE CASES** | ) | **CASE NO. NO.1:07CV2282** |
| | ) | **07CV2532** |
| | ) | **07CV2560** |
| | ) | **07CV2602** |
| | ) | **07CV2631** |
| | ) | **07CV2638** |
| | ) | **07CV2681** |
| | ) | **07CV2695** |
| | ) | **07CV2920** |
| | ) | **07CV2930** |
| | ) | **07CV2949** |
| | ) | **07CV2950** |
| | ) | **07CV3000** |
| | ) | **07CV3029** |
| | ) | |
| | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| | ) | |
| | ) | |
| | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |

**CHRISTOPHER A. BOYKO, J.**:

On October 10, 2007, this Court issued an Order requiring Plaintiff-Lenders in a number of pending foreclosure cases to file a copy of the executed Assignment demonstrating Plaintiff was the holder and owner of the Note and Mortgage *__as of the date the__ __Complaint__ __was filed__*, or the Court would enter a dismissal. After considering the submissions, along with all the documents filed of record, the Court dismisses the captioned cases without prejudice. The Court has reached today's determination after a thorough review of all the relevant law and the briefs and arguments recently presented by the parties, including oral

arguments heard on Plaintiff Deutsche Bank's Motion for Reconsideration. The decision, therefore, is applicable from this date forward, and shall not have retroactive effect.

## LAW AND ANALYSIS

A party seeking to bring a case into federal court on grounds of diversity carries the burden of establishing diversity jurisdiction. *Coyne v. American Tobacco Company*, 183 F. 3d 488 (6th Cir. 1999). Further, the plaintiff "bears the burden of demonstrating standing and must plead its components with specificity." *Coyne*, 183 F. 3d at 494; *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982). The minimum constitutional requirements for standing are: proof of injury in fact, causation, and redressability. *Valley Forge*, 454 U.S. at 472. In addition, "the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Coyne*, 183 F. 3d at 494 (quoting *Pestrak v. Ohio Elections Comm'n*, 926 F. 2d 573, 576 (6th Cir. 1991)). To satisfy the requirements of Article III of the United States Constitution, the plaintiff must show he has ***personally suffered some actual injury*** as a result of the illegal conduct of the defendant. (Emphasis added). *Coyne*, 183 F. 3d at 494; *Valley Forge*, 454 U.S. at 472.

In each of the above-captioned Complaints, the named Plaintiff alleges it is the holder and owner of the Note and Mortgage. However, the attached Note and Mortgage identify the mortgagee and promisee as the original lending institution — one other than the named Plaintiff. Further, the Preliminary Judicial Report attached as an exhibit to the Complaint makes no reference to the named Plaintiff in the recorded chain of title/interest. The Court's Amended General Order No. 2006-16 requires Plaintiff to submit an affidavit along with the Complaint, which identifies Plaintiff either as the original mortgage holder, or as an assignee,

-2-

trustee or successor-in-interest. Once again, the affidavits submitted in all these cases recite the averment that Plaintiff is the owner of the Note and Mortgage, without any mention of an assignment or trust or successor interest. Consequently, the very filings and submissions of the Plaintiff create a conflict. In every instance, then, Plaintiff has not satisfied its burden of demonstrating standing at the time of the filing of the Complaint.

Understandably, the Court requested clarification by requiring each Plaintiff to submit a copy of the Assignment of the Note and Mortgage, executed as of the date of the Foreclosure Complaint. In the above-captioned cases, *none* of the Assignments show the named Plaintiff to be the owner of the rights, title and interest under the Mortgage at issue as of the date of the Foreclosure Complaint. The Assignments, in every instance, express a present intent to convey all rights, title and interest in the Mortgage and the accompanying Note to the Plaintiff named in the caption of the Foreclosure Complaint upon receipt of sufficient consideration on the date the Assignment was signed and notarized. Further, the Assignment documents are all prepared by counsel for the named Plaintiffs. These proffered documents belie Plaintiffs' assertion they own the Note and Mortgage by means of a purchase which pre-dated the Complaint by days, months or years.

Plaintiff-Lenders shall take note, furthermore, that prior to the issuance of its October 10, 2007 Order, the Court considered the principles of "real party in interest," and examined Fed. R. Civ. P. 17 — "Parties Plaintiff and Defendant; Capacity" and its associated Commentary. The Rule is not *apropos* to the situation raised by these Foreclosure Complaints. The Rule's Commentary offers this explanation: "The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the

-3-

proper party to sue is difficult or when an understandable mistake has been made. ... It is, in cases of this sort, intended to insure against forfeiture and injustice ..." Plaintiff-Lenders do not allege mistake or that a party cannot be identified. Nor will Plaintiff-Lenders suffer forfeiture or injustice by the dismissal of these defective complaints otherwise than on the merits.

Moreover, this Court is obligated to carefully scrutinize all filings and pleadings in foreclosure actions, since the unique nature of real property requires contracts and transactions concerning real property to be in writing. R.C. § 1335.04. Ohio law holds that when a mortgage is assigned, moreover, the assignment is subject to the recording requirements of R.C. § 5301.25. *Creager v. Anderson* (1934), 16 Ohio Law Abs. 400 (interpreting the former statute, G.C. § 8543). "Thus, with regards to real property, before an entity assigned an interest in that property would be entitled to receive a distribution from the sale of the property, their interest therein must have been recorded in accordance with Ohio law." *In re Ochmanek*, 266 B.R. 114, 120 (Bkrtcy.N.D. Ohio 2000) (citing *Pinney v. Merchants' National Bank of Defiance*, 71 Ohio St. 173, 177 (1904).[1]

This Court acknowledges the right of banks, holding valid mortgages, to receive timely payments. And, if they do not receive timely payments, banks have the right to properly file actions on the defaulted notes — seeking foreclosure on the property securing the notes. Yet, this Court possesses the independent obligations to preserve the judicial integrity of the federal court and to jealously guard federal jurisdiction. Neither the fluidity of

---

[1] Astoundingly, counsel at oral argument stated that his client, the purchaser from the original mortgagee, acquired complete legal and equitable interest in land when money changed hands, even before the purchase agreement, let alone a proper assignment, made its way into his client's possession.

-4-

the secondary mortgage market, nor monetary or economic considerations of the parties, nor the convenience of the litigants supersede those obligations.

Despite Plaintiffs' counsel's belief that "there appears to be some level of disagreement and/or misunderstanding amongst professionals, borrowers, attorneys and members of the judiciary," the Court does not require instruction and is not operating under any misapprehension. The "real party in interest" rule, to which the Plaintiff-Lenders continually refer in their responses or motions, is clearly comprehended by the Court and is not intended to assist banks in avoiding traditional federal diversity requirements.[2] Unlike Ohio State law and procedure, as Plaintiffs perceive it, the federal judicial system need not, and will not, be "forgiving in this regard."[3]

---

[2]

Plaintiff's reliance on Ohio's "real party in interest rule" (ORCP 17) and on any Ohio case citations is misplaced. Although Ohio law guides federal courts on substantive issues, state procedural law cannot be used to explain, modify or contradict a federal rule of procedure, which purpose is clearly spelled out in the Commentary. "In federal diversity actions, state law governs substantive issues and federal law governs procedural issues." *Erie R.R. Co. v. Tompkins*, 304 U.S. 63 (1938); *Legg v. Chopra*, 286 F. 3d 286, 289 (6th Cir. 2002); *Gafford v. General Electric Company*, 997 F. 2d 150, 165-6 (6th Cir. 1993).

[3]

Plaintiff's, "Judge, you just don't understand how things work," argument reveals a condescending mindset and quasi-monopolistic system where financial institutions have traditionally controlled, and still control, the foreclosure process. Typically, the homeowner who finds himself/herself in financial straits, fails to make the required mortgage payments and faces a foreclosure suit, is not interested in testing state or federal jurisdictional requirements, either *pro se* or through counsel. Their focus is either, "how do I save my home," or "if I have to give it up, I'll simply leave and find somewhere else to live."

In the meantime, the financial institutions or successors/assignees rush to foreclose, obtain a default judgment and then sit on the deed, avoiding responsibility for maintaining the property while reaping the financial benefits of interest running on a judgment. The financial institutions know the law charges the one with title (still the homeowner) with maintaining the property.

There is no doubt every decision made by a financial institution in the foreclosure process is driven by money. And the legal work which flows from winning the financial institution's favor is highly lucrative. There is nothing improper or wrong with financial institutions or law firms making a profit — to the contrary , they should be rewarded for sound business and legal practices. However, unchallenged by underfinanced opponents, the institutions worry less about jurisdictional requirements and more about maximizing returns. Unlike the focus of financial institutions, the federal courts must act as gatekeepers, assuring that only those who meet diversity and standing requirements are allowed to pass through. Counsel for the institutions are not without legal argument to support their position, but their arguments fall woefully short of justifying their premature filings, and utterly fail to satisfy their standing

-5-

## CONCLUSION

For all the foregoing reasons, the above-captioned Foreclosure Complaints are dismissed without prejudice.

**IT IS SO ORDERED.**

**DATE: October 31, 2007**

 **S/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**

---

and jurisdictional burdens. The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the Court to stop them at the gate.

The Court will illustrate in simple terms its decision: "Fluidity of the market" — "X" dollars, "contractual arrangements between institutions and counsel" — "X" dollars, "purchasing mortgages in bulk and securitizing" — "X" dollars, "rush to file, slow to record after judgment" — "X" dollars, "the jurisdictional integrity of United States District Court" — "Priceless."